UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOSHUA R. JONES, b/n/f | ) | |
| MARCELLA AMOS; ESTATE OF | ) | |
| JOSHUA R. JONES by Administratrix | ) | |
| MARCELLA AMOS; and MARCELLA | ) | |
| AMOS, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:14-cv-00026 |
| | ) | |
| TOWN OF HIGHLAND, INDIANA; | ) | |
| DAN VASSER, individually and in his | ) | |
| official capacity as President of | ) | |
| Highland Town Council; HIGHLAND | ) | |
| POLICE DEPARTMENT; PETER | ) | |
| HOJNICKI, individually and in his | ) | |
| official capacity as Town of | ) | |
| Highland Chief of Police; SHAWN M. | ) | |
| ANDERSON, individually and in his | ) | |
| official capacity as Corporal in Highland | ) | |
| Police Department; BRIAN ORTH, | ) | |
| individually and in his official | ) | |
| capacity as Officer in Highland Police | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Plaintiff Marcella Amos filed this suit on her own behalf and on behalf of her deceased son Joshua Jones and his Estate. Amos alleges that she asked the police to come to her home to do a wellness check on Jones, who suffered from schizophrenia. Two police officers came, the encounter became violent, and the police officers shot Jones several times, killing him. Amos is suing the police officers who killed Jones, as

well as the police chief, the police department, the town, and the president of the town council. Her federal and state claims allege excessive force, wrongful death, unconstitutional policies or practices, and intentional infliction of emotional distress. The defendants moved to dismiss certain claims against certain defendants. Amos never responded. For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## FACTUAL BACKGROUND

Before his death in 2012, Jones lived with his mother, Amos. (Compl. ¶ 11.) Jones suffered from schizophrenia. (*Id.* ¶ 12.) The tragic circumstances surrounding Jones's death started when Jones was acting out because of his illness. Late that night, or shortly after midnight, Amos called her mother and asked her to call the police to do a wellness check on Jones at Amos's home. Highland Police Corporal Anderson and Officer Orth responded to the call at approximately 12:45 a.m. (*Id.* ¶¶ 13-14.) Jones opened the door for them and told Amos that the police were there. (*Id.* at ¶ 15.) Amos let the officers in the house and told them that Jones was schizophrenic. She said that earlier in the day Jones had been in Amos's bedroom with a butcher knife, and also that he had put his hands around her neck. (*Id.* ¶¶ 16-17.) This must have enraged Jones because he responded by calling his mom a "n_____" and then, in the presence of the two officers, he hit her in the jaw with his fist. Amos fell to the ground in the hallway and Jones landed on top of her, trying to hit her. (*Id.* ¶¶ 17-18.) Officer Orth attempted to restrain Jones, and Officer Anderson used his Taser twice, attempting to end the

2

struggle between Jones and Amos. (*Id.* ¶¶ 19-20.) Amos was able to escape, and moved away, but she could see Jones being held down on the hallway floor. Amos heard Jones tearfully shouting "get off me." (*Id* ¶ 21.) Amos, feeling overwhelmed, moved away, then heard gunshots. (*Id.* ¶ 22.) When Amos asked police officers outside of her home what had happened to her son, she was given no answer. (*Id.* ¶ 23.) She then saw Jones taken to an ambulance lying naked on a white sheet on a gurney. (*Id.* ¶ 24.)

The coroner reported Jones's cause of death as traumatic injuries due to multiple gunshot wounds. The autopsy revealed nine gunshot wounds. (*Id.* ¶¶ 25, 24a.[1])

## DISCUSSION

Amos's Complaint alleges four claims. The defendants' motion to dismiss challenges one claim in its entirety, and two others only with respect to particular defendants. I won't address the claims the defendants don't challenge. I will take up the claims they do challenge, ultimately granting the defendants' motion in part and denying it in part. The defendants make several disparate arguments for the dismissal of various parts of Amos's claims: (a) Highland Town Council President Dan Vasser should be dismissed because no relief is sought against him specifically; (b) Hojnicki can't be sued in his individual capacity because he wasn't directly involved in the alleged excessive use of force that led to this suit; (c) Indiana Tort Claims Act immunity applies to the state law claims; and (d) the Highland Police Department can't be sued

---

[1] The Complaint contains two paragraphs 24 and two paragraphs 25. For clarity I refer to the second of each as 24a and 25a, respectively.

because it's not an entity independent from the Town. This piecemeal approach to analyzing and dismissing claims against particular defendants is complicated, but it will streamline the case for discovery, and for future proceedings and briefing. My task has been made much more difficult by the fact that the plaintiff hasn't bothered to respond to the motion.

For starters, I note that a plaintiff is not obligated to respond to a motion to dismiss. This is because a plaintiff "can simply rest on the assumed truthfulness and liberal construction afforded [her] complaint." *Curtis v. Bembenek*, 48 F.3d 281, 287 (7th Cir. 1995); *see also Bugariu v. Town of St. John*, No. 2:13-cv-00355, 2014 U.S. Dist. LEXIS 31782, at *4-5 (N.D. Ind. Mar. 12, 2014). It is probably not the wisest course for a litigant to take, but in any event, the motion is now ripe for decision, although not fully briefed.

Federal Rule of Civil Procedure 8 sets out the baseline for a viable claim. It requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he traditional purpose of notice pleading . . . [is to] give[] defendants fair notice of the claims against them and a reasonable opportunity to form an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage I will accept all factual allegations as true and draw all reasonable

4

inferences in the plaintiff's favor, but I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Therefore I must first identify and disregard all "allegations in the complaint that are not entitled to the assumption of truth," especially any legal conclusions. *Id.* at 680-81. Then I will analyze the remaining allegations to determine whether they plausibly – and not merely possibly or conceivably – suggest an entitlement to relief. *Id.* at 681, 683. This task invariably requires me to draw on my judicial experience and common sense. *Id.* at 679.

Under 42 U.S.C. § 1983 a plaintiff can sue a defendant who "acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States." *Pittman v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014).

Before delving into the details of the claims, one defendant must be dismissed from the case entirely. "The naming of the Town's Police Department as a defendant adds nothing; it is almost certainly not a suable entity separate from the Town." *West by & Through Norris v. Waymire*, 114 F.3d 646, 646-47 (7th Cir. 1997) (citations omitted); *see also, e.g.*, *Wiseman v. City of Mich. City*, 966 F. Supp. 2d 790, 796 (N.D. Ind. 2013) (collecting cases); *Nevinger v. Town of Goodland*, No. 4:11-cv-00025, 2011 U.S. Dist. LEXIS 75026, at *4-5, (N.D. Ind. July 12, 2011) ("Under Indiana law, although a 'unit' of local government may be sued, its individual departments including its police department may not. IC 36-1-4-3. Indiana Code defines a 'unit' of government as a 'county, municipality, or township.' IC 36-1-2-23. The Police Department is none of these.") The

Highland Police Department is therefore dismissed from the suit, and won't be addressed in my consideration of the various claims.

### 1. Count 1: Unconstitutional Policy of Excessive Use of Police Force

Amos's first claim is brought pursuant section 1983 against the Town of Highland, Police Chief Hojnicki, Officers Anderson and Orth, the (now dismissed) Police Department, and possibly Town Council President Dan Vasser. Amos states that the Town and Police Department, and their leadership, permitted excessive use of police force to such an extent that it constituted a policy or custom. (Compl. ¶¶ 27-37.)

Policymakers can be sued in their official capacity for promulgating unconstitutional policies or allowing unconstitutional practices so regularly that they have the force of policy. This is referred to as *Monell* liability. *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674-75 (7th Cir. 2009) (*citing Monell v. City of New York*, 436 U.S. 658 (1978)). A plaintiff "can establish a 'policy or custom' by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (internal quotation marks and citation omitted). Thus *Monell* liability may involve a formal policy, but it need not. "'If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to

infer there is a policy at work.'" *Valentino*, 575 F.3d at 675 (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)))).

In order to recover against any particular state actor individually, a plaintiff must show that the named defendant was personally involved in the alleged constitutional violations. *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)); *see also J.H. v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003), *cert. denied*, 541 U.S. 975 (2004), *reh'g and reh'g, en band, denied*, 2003 U.S. App. LEXIS 24287 (7th Cir. Dec. 1, 2003). Thus, a supervisor won't be held liable simply because she was a supervisor, but she may be liable if the violation occurred with her knowledge or consent, or if she exhibited deliberate, reckless indifference to subordinates' misconduct. *See Sanville*, 266 F.3d at 740 (citations omitted).

An official capacity suit, on the other hand, is a "way of pleading an action against an entity" of which the named defendant is an agent, but where "the real party in interest is the entity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). An official capacity suit against an officeholder is therefore redundant to a suit against the office. *See, e.g.*, *Budd v. Motley*, 711 F.3d 840, 843-44 (7th Cir. 2013). The key to deciding the defendants' motion to dismiss here is understanding who can be sued, and in what capacity, for section 1983 policy claims.

7

The defendants concede that Hojnicki may be sued under Count 1 in his official capacity (DE 10 at 3), but argue that Dan Vasser should be dismissed from the case because "no relief is sought against [him] . . . in the allegations of the Complaint or in the prayers for relief." (DE 11 at 2.) This isn't quite true, however. In the allegations of her first claim, Amos states "defendant TOWN OF HIGHLAND, under the leadership of DAN VASSER does not properly investigate police use of excessive force and discipline officers for use of excessive force." (Compl. ¶ 31.) While Amos didn't list Vasser in the Count 1 heading or the prayer for relief, the Complaint put Vasser on notice of the allegations against him. Amos therefore states a *Monell* claim against Vasser in his official capacity for an unconstitutional policy or practice under section 1983.

Nonetheless, the official capacity claims against Hojnicki and Vasser under section 1983 are redundant, given the additional claim leveled against the Town directly. Suing the individuals as officials is merely another way to sue the Town, and including two unnecessary defendants muddles the claim without adding any benefit for Amos. Vasser and Hojnicki are therefore dismissed from Count 1 in their official capacities.

Now I turn to whether Amos's suit is appropriate against defendants in their individual capacities. The defendants argue that Police Chief Hojnicki can't be sued in his individual capacity in this case because "the Complaint does not allege any personal involvement by him in the alleged use of force." (DE 11 at 2.)

To sustain a section 1983 claim against Hojnicki and Vasser, Amos must adequately plead that they participated in the constitutional violation. Amos alleges that the Town of Highland and its Police Department, led by Vasser and Hojnicki personally, encourage use of excessive police force (through failure to train, supervise, and investigate claims of wrongdoing) to the extent that excessive force is the policy or accepted practice of the Highland Police Department. (Compl. ¶¶ 28, 31.) It is this unconstitutional policy or practice that allegedly led to the constitutional deprivations at issue in this case. (Compl. ¶ 34.) These allegations are fairly conclusory, and while they make some sense with respect to Hojnicki (logically the police chief would be personally responsible for police policy and investigating police misconduct), Amos hasn't met her burden with respect to Vasser. There is no suggestion in the complaint that Vasser personally had any connection to police policy generally or the offending policy in particular, and his position alone doesn't necessarily connect directly to the formation of police policy. The complaint therefore adequately pleads a section 1983 claim against Hojnicki in his individual capacity. I note that this won't be an easy claim to prove, and will require a showing that a constitutional violation occurred with Hojnicki's encouragement, or that he exhibited deliberate, reckless indifference to subordinates' misconduct.

Finally, I note that the heading of Count 1 lists Officers Anderson and Orth, although the allegations in the Count sound in *Monell* liability. *Monell* liability for unconstitutional policy, practice or custom naturally attaches to the actions of

policymakers. There is no suggestion that either Anderson or Orth was a policymaker. The complaint therefore doesn't adequately allege a *Monell* claim against Officers Anderson and Orth. Even if it did, they would be dismissed from this Count for the same reason I dismissed Vasser and Hojnicki from this count. Officers Anderson and Orth are therefore dismissed from Count 1 in their official and individual capacities, to the extent that it was directed at them in either capacity.

### 2. Count 3: Intentional Infliction of Emotional Distress on Amos

Amos's third Count alleges a state law claim on her own behalf of intentional infliction of emotional distress against Officers Anderson and Orth. Amos bases her claim on the officers' failure to separate Amos from Jones, and then failure to tell Amos what happened. (Compl. ¶¶ 39-40.) The defendants argue that the officers are immune to such claims for intentional infliction of emotional distress under the Indiana Tort Claims Act. (DE 11 at 5.) I agree with the defendants, because Anderson and Orth were acting within the scope of their employment, so this claim against them is dismissed.

To make a successful intentional infliction of emotional distress claim a plaintiff must show that the defendant: "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Brown v. Indianapolis Hous. Agency*, 971 N.E.2d 181, 188 (Ind. Ct. App. 2012). Even without immunity issues, this is a very difficult claim to prove, and requires showing that the defendant's behavior "exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Curry v. Whitaker*, 943 N.E.2d 354,

10

361 (Ind. Ct. App. 2011). While I'm not sure Amos even adequately alleges a claim for intentional infliction of emotional distress, the defendants skip that argument and move on to immunity, so, lacking any briefing on the issue, I will do the same.

Under the Indiana Tort Claims Act, a government entity or employee isn't liable for loss resulting from the enforcement of a law conducted within the scope of a government employee's employment. I.C. § 34-13-3-3(8)(A). To determine whether a police officer is immune we determine whether he was acting in the scope of his employment when the plaintiff was injured, and whether the officer was enforcing a law at the time. *Snyder v. Smith*, No. 1:13-cv-00576, 2014 U.S. Dist. LEXIS 33321, at *72 (S.D. Ind. Mar. 14, 2014) (citing *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010) (citing *City of Anderson v. Davis*, 743 N.E.2d 359, 364 (Ind. Ct. App. 2001))). The purpose of a police department includes preserving the peace, preventing offenses, guarding the public health, and enforcing laws. A police officer is acting within the scope of his employment when he is doing activities involving the pursuit of this purpose. Pursuing this purpose negligently doesn't mean the officer is no longer acting within the scope of his employment, and, in fact, it is towards such instances of negligence that Tort Claims Act immunity is often directed. *See Harness v. Schmitt*, 924 N.E.2d 162, 166 (Ind. Ct. App. 2010); *City of Anderson v. Davis*, 743 N.E.2d 359, 364-65 (Ind. Ct. App. 2001). "Even criminal acts may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the

employment relationship as to fall within its scope." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003) (quotation marks, citation omitted).

Another part of Indiana's Tort Claims Act also addresses government employees' personal liability. After reiterating that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally," the statute explains what must be alleged to successfully sue the employee if he was acting outside the scope of employment. I.C. § 34-13-3-5(b). A viable claim against a government employee personally must allege that the wrongful act was subject to one of several aggravating circumstances, specifically that it was (1) criminal, (2) clearly outside the scope of the employee's employment, (3) malicious, (4) willful and wanton, or (5) calculated to benefit the employee personally. The law also notes that the allegations must be supported by a reasonable factual basis. I.C. § 34-13-3-5(c).

Immunity is an affirmative defense. *Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 291 (Ind. Ct. App. 2013); *see also Wilson v. City of Chi.*, No. 13-1279, 2014 U.S. App. LEXIS 13459, at *12 (7th Cir. July 14, 2014). Typically "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss. The exception occurs where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense . . . ." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citation omitted), *reh'g denied*, 2005 U.S. App. LEXIS 17023, at *1 (7th Cir. Aug. 11, 2005).

According to the allegations, Officers Anderson and Orth went to Amos's home when they were called to do a wellness check. They were clearly acting within the scope of their employment; in fact, there is no allegation to the contrary. The first count, for *Monell* liability, attempts to hold the officers' employers liable for the policy or custom under which the officers carried out their employment duties. The situation escalated as Anderson and Orth tried to stop Jones's assault on Amos, an enforcement of law. Amos alleges that the failure to separate Amos from Jones "was intentional and done with disregard for her safety and rights." (Compl. ¶ 39.) In the same paragraph, however, Amos alleges that the officers "were generally negligent and failed to maintain control of the situation." (*Id.*) Amos has attempted to inject language that might take her claim out of Tort Claims Act immunity, but the facts she alleges indicate that the officers were acting within the scope of their police duties in performing a wellness check and interceding when Jones attacked Amos. They were only present because they were acting within the scope of their employment, and Amos can only claim that they had any duty to "maintain control of the situation" by dint of their employment. *See, e.g.*, *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185-86 (Ind. Ct. App. 1999) (remanding for dismissal of intentional infliction of emotional distress claim where officers disobeyed order to charge plaintiff by summons rather than arrest warrant and deliberately arrested plaintiff at public event, holding that officers' behavior was within scope of employment although it was callous and not to be condoned); *Hendricks v. New Albany Police Dep't*, 749 F. Supp. 2d 863, 869 (S.D. Ind. 2010). The allegations generally

sound in negligence rather than any of the aggravating factors that could destroy the officers' immunity. Count 3 therefore cannot survive a claim of immunity, and is dismissed.

### 3. Count 4: Wrongful Death

Amos's fourth count alleges that Jones's death was wrongfully wrought by the Town of Highland, the (already dismissed) police department, Police Chief Hojnicki, and Officers Anderson and Orth. The defendants move for the dismissal of this count against Hojnicki, Anderson and Orth, arguing that they are immune under the Indiana Tort Claims Act. (DE 11 at 6.) The same Tort Claims Act immunity law applies as to Amos's claim of intentional infliction of emotional distress. *See supra*. Government employees can't be sued for acts done within the scope of their employment. The fact that acts were negligent, or even criminal, doesn't automatically remove those acts from the scope of employment. Based on Amos's allegations, the officers' actions that resulted in Jones's death were done in the scope of the officers' employment, as I've explained with respect to the intentional infliction of emotional distress claim. The officers went to the home because they were called there to do a wellness check on Jones because of Jones's violent and threatening behavior towards Amos that day. Whether the officers exercised proper force is a question for other claims through discovery and trial, but as a matter of law I find that the officers' actions arose directly out of their performance of their employment duties. *Bushong v. Williamson*, 790 N.E.2d 467, 473, 2003 Ind. LEXIS 571, 11 (Ind. 2003) ("Generally, whether the tortious act of an

employee is within the scope of employment is a question of fact. However, under certain circumstances the question may be determined as a matter of law."). This claim is therefore dismissed.

*   *   *

For the sake of clarity, after the partial dismissal as ordered above, the following claims remain:

- 42 U.S.C. § 1983 claim for unconstitutional policy or custom liability against the Town of Highland;
- 42 U.S.C. § 1983 claim of deliberate indifference against Chief Hojnicki in his individual capacity;
- 42 U.S.C. § 1983 claim for excessive force against Corporal Anderson and Officer Orth in their individual capacities; and
- a state law claim for wrongful death against the Town of Highland.

## CONCLUSION

**THEREFORE** Defendants' motion for partial dismissal is **GRANTED IN PART AND DENIED IN PART**. Claims and defendants are dismissed, and the motion is **GRANTED IN PART**, as follows:

1. The Highland Police Department is dismissed from the suit;

2. Count 1 is dismissed against Vasser, Hojnicki, Anderson and Orth in their official capacities;

3. Count 3, for intentional infliction of emotional distress against Officers Anderson and Orth, is dismissed based on Tort Claims Act immunity; and

4. Count 4, for wrongful death, is dismissed with respect to Hojnicki, Anderson and Orth based on Tort Claims Act immunity.

All other requests in Defendants' motion for partial dismissal are **DENIED**. (DE 10.)

**SO ORDERED.**

ENTERED: September 3, 2014

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**